LOUIS GINSBURG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13601. Promulgated September 20, 1928.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Harold Allen, Esq.* and *W. R. Lunsford, Esq.*, for the. respondent.

418

## OPINION.

ARUNDELL: The petitioner does not question the correctness of the deficiency in tax determined by the respondent. He asserts that assessment is barred by the statute of limitations, and that the respondent erred in finding that he made a false and fraudulent return with intent to evade tax. Whether assessment is barred depends upon the determination of the fraud question, for no assessment was made within five years of the filing of the return and the taxpayer has not executed a waiver. This proceeding was heard prior to the enactment of the Revenue Act of 1928, and at that time, under our rules of practice, the burden of proof in all cases (except in respect of new matter pleaded by the respondent) was upon the petitioner and it was incumbent upon him to overcome the presumption of correctness attaching to the respondent's determination. This rule is in line with the numerous decisions which hold that penalty provisions in revenue laws are not penal laws in the sense that requires them to be construed with great strictness in favor of the defendant. In the case of *United States* v. *Stowell*, 133 U. S. 1, 12, it is said:

By the now settled doctrine of this court, (notwithstanding the opposing dictum of Mr. Justice McLean in *United States* v. *Sugar*, 7 Pet. 453, 462, 463,) statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature. *Taylor* v. *United States*, 3 How. 197, 210; *Cliquot's Champagne*, 3 Wall. 114, 145; *United States* v. *Hodson*, 10 Wall. 395, 406; *Smythe* v. *Fiske*, 23 Wall. 374, 380.

One of the defenses of petitioner to the assertion of fraud is that he secured and acted on the advice of counsel in preparing his 1919 return. Whatever may be the consequence of advice of counsel under some circumstances, it can have no extenuating effect here, for it is quite clear from both the testimony of petitioner and of the attorney whose advice he had that the facts set before the attorney were not those upon which the respondent has predicated the additional tax here involved. All of the evidence is to the effect that the only question put to the attorney by the partners was whether the receipt of corporate stock for the partnership assets would result in taxable income, and on that point he ad-

vised them. The respondent is not asserting a tax on that transaction, but on the petitioner's distributive share of the partnership income.

It does not appear that the petitioner sought advice on the question of the taxability of his distributive share of the partnership income and of course, advice given on another question is of no avail as a refuge from the consequences of his failure to report such income. It does affirmatively appear that the partners knew at September 12, 1919, that partnership earnings had accumulated. At that time the stock was issued for the partnership assets, and it was unequivocally stated by one of the partners that the assets represented simply the earnings of the partnership. Ledger sheets placed in evidence show shipments of goods in large amounts to the partnership and remittances by it of considerable sums throughout the period of its existence. There is testimony that the amount of the earnings could not have been determined until an inventory was taken at the end of the year and that the amount was not actually determined until 1924. When, at the end of 1919, the inventory was taken, there was ample time to make a segregation between the partnership and corporation earnings before the date for filing returns, and the delay in making the computation affords the petitioner no valid excuse for his failure to make a proper return.

The making of returns of income was no new thing to petitioner when his return for 1919 was due, for, according to his own testimony, he had prepared returns for the years 1917 and 1918. Petitioner is an intelligent business man, and we can not believe but that he knew that the profits of the partnership were taxable to the members of the partnership. At the time that the scheme for issuing stock for partnership profits was devised the Revenue Act of 1918 had been enacted, and when petitioner filed his return the Act had been in effect for more than a year. Section 218 of that Act is quite specific in requiring partners to include in income their distributive shares whether distributed or not. Certainly he did know that his financial condition had changed during the year as a result of the profitable partnership operations, yet he made no disclosure of the fact in his return. The return was false in the omission of a report of the transaction. *Thomas L. Ross*, 13 B. T. A. 69. The slightest intention of honesty would have compelled a disclosure of financial transactions which resulted in profits to the so-called branch far in excess of the income of the parent concern. At least as early as June or July the partners were aware of the fact that the partnership was a profitable venture, for they were then contemplating the transfer of the profits to the corporation for stock.

Upon consideration of all the evidence, we are of the opinion that the presumption of correctness attaching to the respondent's finding that the understatement of income in petitioner's return for 1919 was false, with intent to evade tax, has not been overcome.

The petitioner's return having been false with intent to evade tax, assessment is not barred. Section 278 (a), Revenue Act of 1926.

Reviewed by the Board.

*Judgment will be entered for the respondent.*